# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FRANCIS MANDEWAH,**
        **Plaintiff,**

      v.                                                             Case No. 07C0410

**WISCONSIN DEPARTMENT OF CORRECTIONS,**
**ROBERT GRUSNICK, JOHN WERNER,**
**and TERRANCE SCHEMENAUER,**
        **Defendants.**

## DECISION AND ORDER

Plaintiff Francis Mandewah, an employee of the Wisconsin Department of Corrections ("DOC"), brings this action against the DOC and several of its managerial employees, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1983. Plaintiff alleges discrimination based on differential treatment and on a hostile work environment. Before me now is defendants' motion for summary judgment.[1]

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating defendants' motion, I take the facts

---

[1] Plaintiff agrees that I must dismiss his § 1983 claim against the DOC and his claims against defendants Matthew J. Frank and Richard Raemisch. Therefore, I will dismiss such claims and amend the caption accordingly. I will not address defendants' previously filed motion to dismiss because my decision on the present motion renders it moot.

in the light most favorable to plaintiff and draw all inferences in plaintiff's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTS

At all relevant times, plaintiff, an African-American, was employed by the DOC as a probation and parole agent. Plaintiff commenced his employment in 2001 in Milwaukee, and in June 2003, voluntarily transferred to Hayward where he was supervised by defendant Terrence Schemenauer. Schemenauer was supervised by defendant John Werner, assistant regional chief and defendant Robert Grusnick, regional chief. Plaintiff was the only non-white agent in the Hayward office.

In support of his claims, plaintiff presents evidence indicating the following: Schemenauer assigned cases to him over a broader geographical area than other agents, requiring him to travel longer distances than other agents. In June 2004, Schemenauer provided all agents except plaintiff with a work directive announcing a new policy regarding mileage logs. Although he did not provide the policy to plaintiff, he investigated plaintiff for violating the policy. In November 2004, Schemenauer ordered plaintiff to check in and out with him every day via e-mail but did not impose this requirement on other agents. Schemenauer declined to permit plaintiff to participate in magistrate training, and he required plaintiff to repeat a basic training course and to remove the paper covering his office windows. In April 2005, Schemenauer accused plaintiff of losing his financial receipt book and demanded his resignation. Plaintiff responded that he had given Schemenauer

2

the book, and Schemenauer pounded the desk, shook his fist at plaintiff and told him to get out of his office and go back to Africa where he belongs.[2]

Defendants investigated plaintiff for violating work rules more than they investigated other agents for comparable conduct. Defendants also suspended plaintiff three times without pay for a total of twenty-five days within eight months, in October 2004 for five days, in April 2005 for ten days and in June 2005 for ten days. Defendants imposed less harsh punishments on other agents who committed similar violations. Ultimately, an arbitrator determined that all three of plaintiff's suspensions were unwarranted.

Plaintiff repeatedly complained about how defendants and other employees treated him. On December 4, 2003, he sent an e-mail to Schemenauer and Werner regarding co-worker Mary Pliss's treatment of him. On November 8, 2004, he complained to affirmative action officer Judi Trampf about being racially harassed. In February 2005, plaintiff met with Schemenauer, Werner and Grusnick and made a similar complaint. In August 2005, plaintiff filed a charge with the EEOC alleging discrimination and retaliation. Plaintiff did not formally complain within the DOC because he believed it would be futile.

Defendants contend that any actions they took concerning plaintiff were justified based on his conduct.

I will state additional facts in the course of the decision.

---

[2]Defendants contest the admissibility of three declarations and attached exhibits offered by plaintiff. First, they argue that the exhibits attached to Heather Curnutt's declaration are not properly authenticated. However, I need not address this issue because I do not rely on the Curnutt declaration or the attached exhibits. Second, defendants challenge the declarations of plaintiff and Amy Huss because they do not state that they are based on personal knowledge. However, regardless of whether the declarations include the phrase "personal knowledge," it is obvious that both declarations are based on such knowledge. Thus, I reject defendants' challenge to these declarations.

### III. DISCUSSION

Defendants make three general arguments in support of their motion for summary judgment: (1) that I should dismiss some of plaintiff's claims because they are not within the scope of his EEOC charge; (2) that I should dismiss the claims that plaintiff included in his EEOC charge for insufficient evidence and/or because plaintiff did not formally present them to the DOC; and (3) that I should dismiss the claims against the individual defendants because such defendants are entitled to qualified immunity.

**A.    Scope of EEOC Charge**

As a general rule, a Title VII plaintiff cannot assert claims in a lawsuit that he failed to include in his EEOC charge. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). This rule gives the EEOC an opportunity to settle the dispute through conference, conciliation, and persuasion, id. at 44, and it gives the employer notice of the conduct complained of. Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992); Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989). Although the rule is not jurisdictional, Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392 (1982), it is a condition precedent with which Title VII plaintiffs must comply. Babrocky v. Jewel Food Co., 773 F.2d 857, 864 (7th Cir. 1985); Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994).

Nevertheless, because laypersons rather than lawyers typically complete most EEOC charges, a Title VII plaintiff need not include in a charge every fact underlying each of his claims. Taylor v. W. & S. Life Ins. Co., 966 F.2d 1188, 1195 (7th Cir. 1992). Rather, a plaintiff's claims are cognizable if they are "'like or reasonably related to the allegations

4

of the charge and growing out of such allegations.'" Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir. 1976) (en banc) (quoting Danner v. Phillips Petroleum Co., 447 F.2d 159, 162 (5th Cir. 1971)). Thus, there need only be a reasonable relationship between the allegations in the charge and the claims in the complaint such that an EEOC investigation of the allegations in the charge would likely lead to discovery of the claims. See McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 481 (7th Cir. 1996). At a minimum, the allegations and claims must describe the same conduct and implicate the same individuals. Id.

In the present case, defendants contend that based on his EEOC charge, plaintiff may bring only a few specific claims. They argue, for example, that because in one paragraph of the charge, plaintiff alleges that Schemenauer discriminated against him by making him remove the paper from his office windows, plaintiff may bring only a disparate treatment claim regarding that specific conduct. They make a similar argument relating to plaintiff's retaliation claim. However, in his EEOC charge, plaintiff asserted broad claims of continuing disparate treatment, harassment and retaliation based on a variety of statements and actions, including that involving the windows. Further, regardless of the contents of an individual paragraph, plaintiff's EEOC charge gave the EEOC and defendants notice of the broad nature of his claims. At a minimum, the allegations in plaintiff's charge and the claims in his complaint, both with respect to discrimination and retaliation, involve the same conduct and implicate the same individuals. Plaintiff's charge clearly indicated continuing disparate treatment, harassment and retaliation, and his claims clearly grow out of the conduct indentified in the charge. An EEOC investigation of the would reasonably have encompassed plaintiff's claims and in fact led to an understanding

5

of his claims.[3] Thus, plaintiff's claims are sufficiently related to the allegations in his EEOC charge that they survive defendants' summary judgment motion based on the scope of the charge.[4]

As to defendants' contention that plaintiff failed to file a separate EEOC charge alleging instances of retaliation after he filed his EEOC charge in August 2005, retaliation for complaining to the EEOC need not be charged separately from the discrimination that gives rise to a complaint. McKenzie, 92 F.3d at 482-83. Thus, where a plaintiff is subjected to retaliation following an EEOC charge, he need not file a separate EEOC charge alleging that instance of retaliation. Defendants argue that National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002) eliminates the post-charge retaliation exception, but the Seventh Circuit has indicated its continued viability. See Horton v. Jackson County Bd. of County Comm'rs., 343 F.3d 897, 898 (7th Cir. 2003) ("[R]etaliation for complaining to the EEOC need not be charged separately from the discrimination that gave rise to the complaint . . . at least . . . if the person discriminated against and the person retaliated against are the same."). In arguing to the contrary, defendants rely on cases that are inapplicable because they involve retaliatory acts occurring prior to the filing of the EEOC charge or the piggybacking doctrine, where an individual who does not file an EEOC charge tries to piggyback onto another individual's charge. Id. at 899.

---

[3]During the EEOC proceedings, the EEOC and defendants discussed the claims presented in plaintiff's complaint. Thus, the EEOC had an opportunity to exercise its conciliatory function.

[4]Plaintiff does not dispute that he abandoned any potential co-worker harassment claim based on the actions of Mary Pliss.

6

**B.      Sufficiency of Evidence**

**1.      Disparate Treatment**

A plaintiff can establish a racial discrimination claim under Title VII in two ways. Under the "direct method," he must present direct or circumstantial evidence that creates a "convincing mosaic of discrimination" on the basis of race. Troupe v. May Dep't Stores Co., 20 F.3d 734, 737 (7th Cir. 1994). Under the indirect method, he must establish a prima facie case of discrimination by presenting evidence that: (1) he is a member of a protected class, (2) his job performance met his employer's legitimate expectations, (3) he was subject to a materially adverse employment action, and (4) the employer treated similarly situated employees outside the protected class more favorably. O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If the plaintiff can demonstrate these four elements, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas Corp., 411 U.S. at 802. If the employer satisfies this burden of production, plaintiff "must then establish that there is an issue of material fact as to whether the employer's proffered reasons are merely pretext for unlawful discrimination or retaliation, in order to survive summary judgment." Hudson v. Chi. Transit Auth., 375 F.3d 552, 561 (7th Cir. 2004) (citing McDonnell Douglas Corp., 411 U.S. at 804). I will analyze plaintiff's effort to use the indirect method.

Plaintiff's disparate treatment claim is primarily that defendants punished him more harshly than they punished other agents who committed comparable violations. His contention is that defendants did not impose suspensions without pay on other similarly

7

situated employees who were not members of a protected class.  He also contends that defendants' denial of his request to attend magistrate training also constitutes disparate treatment.  The failure of an employer to provide training will support a prima facie case of discrimination, regardless of whether the training was material to a future promotion. Pafford v. Herman, 148 F.3d 658, 667 (7th Cir. 1998).  Defendants respond to plaintiff's claim that he was punished more harshly than others by asserting that they suspended him without pay based on a neutral and unbiased consideration of his conduct and not illegitimate discriminatory reasons.  However, even assuming that defendants had a legitimate reason for punishing plaintiff, they fail to respond to plaintiff's assertion that the suspensions without pay were discriminatory because they were too harsh.

When "a plaintiff claims that he was disciplined . . . more harshly than a similarly situated employee based on some prohibited reason-a plaintiff must [typically] show that . . . the two employees . . . engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000).  In the present case, plaintiff presents evidence that defendants punished three similarly situated agents less harshly than himself and that defendant also failed to comply with the DOC's progressive punishment guidelines.  Specifically, plaintiff asserts that the DOC suspended him for five days for his first rule violation, and it imposed only a verbal reprimand on Bill Lennox, a white agent in the Hayward office, for a similar violation.  Additionally, the DOC's punishment guidelines recommend a verbal reprimand for a first violation of the type committed by plaintiff and Lennox.  Plaintiff also shows that the DOC punished other agents who committed violations similar to his more severely than himself.  For example,

8

plaintiff shows that the DOC suspended Charles Grimsby for three days for his second violation in twelve months in contrast to plaintiff's five-day suspension for his first violation. Similarly, the DOC imposed only a written reprimand for violations of three work rules on James Studenec. In addition, plaintiff shows that the DOC permitted Lennox to attend magistrate training. Defendants do not present evidence justifying their differential treatment of plaintiff.

Thus, plaintiff may proceed on his disparate treatment claims regarding the suspensions and the refusal to provide magistrate training.

### 2. Hostile Work Environment

An employer may be liable for discrimination within the meaning of Title VII if it permits an employee to be subject to a hostile work environment based on his race. To recover, an employee must show that: 1) he was subject to unwelcome harassment; 2) the harassment was based on his race; 3) the harassment was severe and pervasive such that it created a hostile or abusive work environment; and 4) there is a basis for employer liability. See Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998). An employer is essentially strictly liable if the employee's supervisor created the hostile work environment. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted). In considering the question of a hostile work environment, a court should consider all circumstances, including "the

9

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. Courts may consider the presence or absence of psychological harm. Id. They must also evaluate the situation from both objective and subjective points of view:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is not a Title VII violation.

Id. at 21-22.

Plaintiff's hostile environment claim is that defendants' discriminatory treatment of him, which involved a combination of verbal treatment, demands, orders, investigations of his conduct and punishment, added up to a hostile work environment. In disputing plaintiff's claim, defendants focus on his assertion that Schemenauer told him to go back to Africa and argue that this statement does not amount to harassment that is sufficiently severe and pervasive to alter the conditions of his environment. However, defendants ignore that plaintiff's claim is based on more than just this incident. Hostile work environment claims generally involve repeated conduct . Morgan, 536 U.S. at 115. In the present case, plaintiff presents evidence not only of the receipt book incident that allegedly led to the go back to Africa remark but also of repeated investigations, punishments including suspensions that appear to be harsher than the norm and other instances in which his supervisor apparently treated him differently than other agents. Further, plaintiff presents evidence that he repeatedly complained about his treatment, that his complaints

10

grew increasingly frequent, and that he requested a transfer, all of which suggests that the conduct at issue interfered with his work. Finally, plaintiff presents evidence indicating that as a result of the work environment, he suffered psychological harm. Thus, plaintiff offers sufficient evidence to survive defendants' contention that he cannot proceed on his hostile work environment claim.

Defendants also argue that because plaintiff failed to avail himself of the DOC machinery for addressing discrimination claims and because Schemenauer took no tangible employment action against him after the incident involving the financial receipt book, plaintiff fails to establish a basis for employer liability. An employer will be liable for a supervisor's harassment if the harasser takes a tangible employment action; if not, however, the employer may escape liability by showing that it exercised reasonable care to prevent and promptly correct the harassment and that the employee unreasonably failed to take advantage of the preventive or corrective opportunities provided by the employer or to otherwise avoid harm. Crawford v. Metro. Gov't of Nashville, 129 S. Ct. 846, 852 (2009). The problem with defendants' argument however is that it is based on the mistaken premise that plaintiff's harassment claim is based solely on the incident involving the receipt book. In any case, defendants suspended plaintiff without pay after such incident, and it can be reasonably inferred that plaintiff's supervisors, Schemenauer and Grusnick, had a hand in such action since they were responsible for recommending when a matter should be investigated and result in discipline. A suspension without pay can be a tangible employment action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71-72 (2006).

11

Additionally, even assuming that defendants took no tangible employment action, plaintiff presents evidence indicating that he contacted DOC officials in an attempt to resolve his concerns about his treatment and that the DOC initiated an investigation of the matter. Thus, while, plaintiff did not file a formal complaint with the DOC, the evidence indicates that he brought the matter to its attention and gave it an opportunity to remedy the situation. Moreover, defendants provide no evidence as to what specific DOC machinery is available. Taking the evidence in the light most favorable to plaintiff, I cannot say that plaintiff failed to avail himself of corrective measures.

### 3. Retaliation

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must show that "(1) []he engaged in statutorily protected expression; (2) []he suffered an adverse action by [his] employer; and (3) there is a causal link between the protected expression and the adverse action." Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1313 (7th Cir. 1989); see also Juarez v. Ameritech Mobile Commc'ns, Inc., 957 F.2d 317, 321 (7th Cir. 1992). If plaintiff makes such a showing, defendants must present a legitimate, nondiscriminatory reason for the adverse action and if they do, plaintiff must show that their proffered reason is pretextual and that their actual reason was discriminatory. See, e.g., McDonnell Douglas, 411 U.S. 792 (1973); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); Johnson v. Sullivan, 945 F.2d 976, 980 (7th Cir. 1991).

12

Defendants argue against plaintiff's retaliation claim based on the scope of the charge rule, which argument I have already addressed and rejected. However, defendants also contend that certain of plaintiff's allegations of retaliation following the filing of the EEOC charge – those involving investigations of him in October 2006 and February 2007 – are not temporally proximate to the filing of the EEOC charge and thus not causally connected to it. Plaintiff does not respond to this argument. Thus, I conclude that he has abandoned his retaliation claim as it relates to the October 2006 and February 2007 investigations. Moreover, such investigations occurred over a year after the filing of the EEOC charge. Thus, I will grant defendants' summary judgment motion as it relates to these claims.

**C.      Qualified Immunity**

Finally, the individual defendants contend that they are entitled to qualified immunity on plaintiff's § 1983 racial harassment and discrimination claims. Governmental officials performing discretionary functions are immune from liability for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "gives public officials the benefit of the legal doubts" when they make official decisions. Elliott v. Thomas, 937 F.2d 338, 341 (7th Cir. 1991). It shields a governmental official from § 1983 liability if "either the federal law he is asserted to have breached was not clearly established at the time of the alleged violation or there exists no genuine dispute of material fact which would prevent a finding that his actions, with respect to following such clearly established law, were objectively reasonable." Tangwall v. Stuckey, 135 F.3d 510, 515 (7th Cir. 1998). All officials, save the "plainly incompetent or those who knowingly

13

violate the law" are protected by qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986).

Defendants contend that plaintiff fails to establish both that the right allegedly violated was clearly established at the time that they acted and that their actions were objectively unreasonable with respect to such clearly established law. As to whether the right in question was clearly established, defendants argue that plaintiff has not come forward with a closely analogous case demonstrating the existence of the right. However,

> [a] right is clearly established when its contours are sufficiently clear so that a reasonable official would realize that what he is doing violates that right. This does not mean that there has to be a case on point holding that the officials' exact conduct is illegal before we will find the officials liable; however, in the light of preexisting law the unlawfulness must be apparent.

Hildebrandt v. Ill. Dep't of Natural Res., 347 F.3d 1014, 1038 n.22 (2003) (citation omitted). And it has been clearly established for some time now that the Equal Protection Clause prohibits race discrimination by public employers. Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 310 n.15 (1977). Defendants make no argument to the contrary. Thus, this argument of defendants fails.

Turning to whether in light of the clearly established law, defendants' actions were objectively reasonable, as discussed above, plaintiff presents sufficient evidence to raise a genuine issue of fact as to whether the DOC violated Title VII. However, plaintiff's claims against the individual defendants arise under 42 U.S.C. § 1983 and assert equal protection violations. Since § 1983 "does not allow actions against individuals merely for their supervisory role of others," Zimmerman v. Tribble, 226 F.3d 568, 574 (7th Cir. 2000), "[i]ndividual liability under § 1983 can only be based on a finding that the defendant caused the deprivation at issue." Kelly v. Mun. Courts of Marion County, Ind., 97 F.3d 902, 909

14

(7th Cir. 1996). A viable § 1983 claim against individuals must be supported by evidence of personal involvement in the alleged constitutional deprivation. Zentmyer v. Kendall County, Ill., 220 F.3d 805, 811 (7th Cir. 2000); Zimmerman, 226 F.3d at 574. Although direct participation is not necessary, plaintiff must at least show that a defendant acquiesced in some demonstrable way in the alleged constitutional violation. Kelly, 97 F.3d at 909; Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986).

In the present case, plaintiff produces sufficient evidence to raise a genuine issue of material fact as to whether defendants Schemenauer and Grusnick intentionally discriminated against and harassed him based on race. Plaintiff shows that Schemenauer was his direct supervisor and was involved in most of the challenged conduct: he was at least in part responsible for the decisions regarding the e-mail check-ins, the paper over windows and the caseload distribution; he was responsible for reporting and writing up allegations of misconduct; he was interviewed during the subsequent investigations, and therefore he was involved in bringing about the resulting suspensions, even if he was not the final decisionmaker with regard to the extent of punishment; plaintiff's evidence regarding the financial receipt book incident and Schemenauer's statement that he should go back to Africa where he belongs raises a genuine issue of fact as to Schemenauer's racial animus. As to Grusnick, the evidence is weaker but still sufficient to raise a genuine issue of fact as to Grusnick's involvement in some of the challenged discriminatory decisions and in decisions relating to a hostile work environment, such as those requiring plaintiff to check in by e-mail daily, to initiate investigations and to recommend discipline. The evidence also indicates that plaintiff complained to Grusnick in a meeting and a follow-up e-mail regarding being subjected to discrimination and harassment. Further, soon after

complaining to Grusnick, plaintiff was the subject of an investigation during which the evidence suggests that Grusnick was interviewed and recommended discipline, although he did not recommend discipline for other employees with similar violations.

As to Werner, however, plaintiff fails to offer evidence raising a genuine issue of fact that he was personally involved in discriminatory activity. Plaintiff does not show that Werner did anything in connection with plaintiff's alleged misconduct. Plaintiff shows that Werner was copied on an e-mail plaintiff sent to Schemenauer regarding his co-worker Mary Pliss, was sent an e-mail regarding the financial book incident and was copied on an e-mail to Schemanauer complaining of Schemenauer's unprofessional manner. None of this activity is sufficient to raise an issue of fact that Werner either personally discriminated against and harassed plaintiff, or acquiesced in such behavior by others. The evidence does not connect Werner directly to any of the challenged decisions or practices. Thus, plaintiff fails to establish that Werner participated in or even was aware of the events in question, and therefore the claims against him fail.

In sum, plaintiff may proceed on his Title VII claims against the DOC as follows: disparate treatment based on the three suspensions and the denial of magistrate training; hostile work environment in the Hayward office; and retaliation as alleged. However, plaintiff's retaliation claim as it relates to the October 2006 and February 2007 investigation allegations fails. Additionally, plaintiff's § 1983 claims against defendant Werner fail for lack of personal involvement, and defendant Werner will be dismissed from this action. However, plaintiff may proceed on his § 1983 claims against defendants Schemenauer and Grusnick. Finally, as plaintiff concedes, all claims against defendants Raemisch and Frank are dismissed, as well as plaintiff's § 1983 claims against the DOC.

**Therefore,**

**IT IS ORDERED** that defendants' motion to dismiss is **DENIED** as moot.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as discussed herein.

**IT IS FURTHER ORDERED** that defendants Raemisch, Frank and Werner are **DISMISSED** from this action.

Dated at Milwaukee, Wisconsin this 16 day of June, 2009.

                                        /s
                                        LYNN ADELMAN
                                        District Judge